**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LESLIE JO CRAEMER, ) | CASE NO.  1:09-cv-1250 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                            ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security,   ) | |
| ) | |
| Defendant.                ) | **MEMORANDUM OPINION & ORDER** |

Claimant, Leslie Jo Craemer, challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying Craemer's applications for a period of Disability Insurance Benefits ("DIB") under Title II Of the Social Security Act, 42 U.S.C. § 416 (i), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 423 and 42 U.S.C. § 1381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

### I. Procedural History

Craemer filed her applications for DIB and SSI on May 3, 2006 alleging, disability beginning October 15, 2003.  Her applications were denied initially and upon reconsideration. Craemer timely requested an administrative hearing.

Administrative Law Judge ("ALJ"), Dennis James LeBlanc, held a hearing on January 13, 2009, at which Craemer, who was represented by counsel, and Kevin Z. Yi, vocational expert ("VE") testified.  The ALJ issued a decision on February 17, 2009, in which he determined that Craemer was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Craemer filed an appeal to this Court.

On appeal, Craemer alleges that the ALJ's hypothetical question to the VE was inadequate because it failed to include counsel's proposed limitations that Craemer would be tardy or absent from work due to her psychological condition; and that, therefore, the ALJ's decision is not supported by substantial evidence.  The Commissioner disputes Craemer's claim.

### II. Evidence

#### A. Personal and Vocational Evidence

Craemer was born on November 22, 1961.  (Transcript ("Tr.") 107).  She was 47 years old at the time of her hearing.  Craemer has a high school diploma.  (Tr. 36).  She has past relevant work as a record clerk in a doctor's office, a factory worker, and a temporary worker.  (Tr. 141)

2

**B.  Medical Evidence**[1]

On January 7, 2004, Craemer was admitted to Portage Path Psychiatric Emergency Services ("Portage Path") after her children were placed in temporary custody with her brother due to deplorable living conditions in her home.  (Tr. 215, 217). Craemer reported a history of depression.  (Tr. 215).  She also reported crying spells, poor sleep, no appetite, and intermittent suicidal ideation.  (Tr. 217).  Craemer spent the night in the hospital and was discharged the next day.  At the time of her discharge, she was diagnosed with major depression, recurrent and assigned a Global Assessment Functioning ("GAF") score of 55.[2]  She was given antidepressant and anti-anxiety medications and scheduled for follow-up.  Her prognosis was noted as fair.  (217-220).

On August 3, 2006, Craemer presented to Frederick G. Leidal, Psy.D.  for a consultive examination.  (Tr. Tr. 242).  Dr. Leidal opined that: (1) Craemer's ability to relate to co-workers or supervisors was not impaired; (2) her ability to accept instruction or criticism was not impaired; (3) her ability to adapt to changes was slightly impaired; (4) her ability to work near others and not be overly distracted was slightly to moderately impaired; (5) her ability to maintain attention and concentration for simple work-related tasks was slightly impaired; (6) her ability to remember simple tasks and learn from

---

[1]Because Craemer's appeal relates only to her mental limitations, summary of the medical evidence will be limited to a summary of the medical evidence related these issues.

[2] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

instruction was slightly impaired; (7) her ability to sustain an ordinary routine without supervision or prompting was slightly to moderately impaired; (8) her persistence in completing routine work related tasks was likely to be moderately impaired; and (9) her pace in task completion was slightly to moderately impaired. Dr. Leidal further opined that Craemer's ability to understand simple instructions was not impaired, however her ability to understand and carry out more detailed instructions was moderately impaired, and her ability to understand and carry out complex instructions was markedly impaired.

Dr. Leidal opined that Craemer's ability to obtain employment without assistance was not impaired. Her ability to perform within a schedule, maintain attendance, and be punctual was not impaired. Her ability to adapt to the work environment, tolerate the stressors of work, and complete a normal work day was moderately impaired. (Tr. 246)

On August 5, 2006, Guy Melvin, Ph D. completed a Mental Residual Functional Capacity Report. (Tr. 249-252). Dr. Melvin opined that Craemer was moderately limited in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination with, or in proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) interact appropriately with the general public; (8) accept instructions and respond appropriately to criticism from supervisors; and (9) respond appropriately to changes in the work setting. No other limitations were noted. (Tr. 249-252).

4

Also on August 5, 2006, Dr. Melvin completed a Psychiatric Review Technique Form. (Tr. 257-268). Dr. Melvin opined that Craemer had mild restriction in activities of daily living; moderate restrictions in maintaining social functioning; and moderate restrictions in maintaining concentration, persistence or pace. He also noted one or two periods of decompensation, each of extended duration, but noted insufficient evidence in that category. (Tr. 267).

On November 3, 2006, Eleanor Rusinek, a counselor at Portage Path, completed a Daily Activities Questionnaire. (Tr. 281-285). Rusinek noted that Children's Services Board was involved with the family and that Craemer had willingly ceded custody of her two sons to her brother. (Tr. 285). She noted that Craemer could do her household chores, personal hygiene, shopping, drive or take public transportation and bank and/or pay bills alone and without help. (Tr. 286). She reported that Craemer is seen monthly for psychotherapy, as needed for psychiatry, and that she keeps her appointments. Rusinek noted that she first saw Craemer in September of 1998 and last saw her on October 17, 2006. (Tr. 286). Rusinek opined that Craemer's ability to: (1) remember, understand, and follow directions; (2) maintain attention, sustain concentration, persist at task, and complete them in a timely manner; and (3) react appropriately to pressures in the work setting were all within normal limits. (Tr. 284).

Craemer presented to Portage Path for individual therapy session in July, August, and October 2007, and March 2008. (Tr. 369-377). On July 20, 2007, she presented with cognitive distortions and irrational thinking. Rusinek reported that Craemer was doing fairly well. (Tr. 369). On July 26, 2007, Craemer reported that her medication is helping her depression, and she is getting much better at preventing depression with

5

her coping skills. (Tr. 370). On August 17, 2007, Rusinek reported that Craemer is functioning quite well. (Tr. 373). On October 31, 2007 Craemer reported that she took a cruise from Seattle to Alaska with her husband. Rusinek reported that Craemer is coping fairly well. (Tr. 374). On March 7, 2008, Rusinek reported that despite medical problems, Craemer is coping fairly well psychologically. (Tr. 377).

On October 2, 2008, Craemer presented to Ravenwood Mental Health Center ("Ravenwood") for an emergency evaluation. She had called a Copeline due to extreme depression and feelings of wanting to die. (Tr. 396). Craemer reported that she and her husband had been living in a residential hotel but could no longer afford to stay there. They were currently at a county home, but they were only permitted to stay there for a short time. (Tr. 396).

Upon examination, Creaemer was noted to be neatly dressed with good hygiene. She was earnest and cooperative. Her thinking was generally clear. Her mood and affect were depressed. Craemer was overwhelmed by her situation. She was anxious and had had a panic attack prior to her interview. Craemer was diagnosed with recurrent major depression and a history of substance abuse in sustained remission. She was assigned a GAF score of 45.[3] Craemer was given samples of Effexor, and she scheduled a follow-up appointment. The examining psychologist noted that emergency services may need to contact Craemer during "this unstable time". (Tr. 397-398).

---

[3] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34.

**C. Hearing Testimony**

From 2004 until May of 2008, Craemer lived in an apartment with her husband. (Tr. 45). While living at the apartment, Craemer cooked meals for herself and her husband, monitored their medication, and cleaned the apartment. Craemer testified that sometimes she felt overwhelmed and would stay in bed. (Tr. 46). Cramer attended church with her husband on Wednesdays and Sundays. (Tr. 46). Craemer would go to the store with her husband, but when she went by herself she was panic ridden and had to leave. (Tr. 46-47). Craemer testified that she liked to read the Bible, poetry, and magazines about animals. She also enjoyed word searches. (Tr. 48).

In May 2008, Craemer was evicted from her apartment and moved into a residential motel with her husband. (Tr. 30). Craemer testified that when she lived at the hotel, she spent most of her time in the room with her dog. Sometimes she and her husband would walk in the yard. (Tr. 45). Craemer lived at the hotel for six or seven months, but they had to leave when they ran out of money and her husband needed surgery. (Tr. 30).

After leaving the hotel, Craemer lived at the Ravenwood facility, where she was living at the time of the hearing. (Tr. 30). At Ravenwood, Craemer attends classes to address her depression, to address her prior cocaine use, and to learn coping skills. (Tr. 30, 44). She testified that she gets along with the people at Ravenwood because she feels they are the "same as her". (Tr. 44).

Craemer last worked in 2003, when she was employed as a medical records clerk. She was laid-off from that job due to cutbacks. (Tr. 31-32). Craemer testified that due to her mental capacity, she did not think she could still do that job. (Tr. 33).

Craemer testified that she suffers from depression, anxiety, and panic attacks. (Tr. 42). Her panic attacks did not begin until October 2008; she has three or four panic attacks a day. (Tr. 42). Craemer testified that she has suffered from depression for some time. Although her depression had improved in the past with treatment, at the time Craemer entered Ravenwood, she felt her depression had worsened. (Tr. 43-44). She testified that since she began taking medication at Ravenwood, her symptoms have improved. (Tr. 44).

The ALJ asked the VE to consider an individual of Craemer's age, education, and vocational background who can: (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for six hours out of an eight hour workday; (3) sit for six hours; (4) push or pull with her upper extremities, (5) reach frequently with her dominant upper extremity, but not overhead; and (6) frequently handle with her dominant upper extremity. The individual cannot climb ladders, ropes, or scaffolds and is limited to occasional stooping. The individual is limited to understanding, remembering, and carrying out only simple instructions. The individual requires a work environment with no strict production quotas. The individual can interact occasionally and superficially with coworkers and supervisors, but the individual cannot interact directly with the public on behalf of the business. (Tr. 55-56).

The VE testified that such an individual could not perform any of Craemer's past work. However, she could work as a housekeeper cleaner, for which there are approximately three million jobs nationally and more than 30,000 jobs in Ohio; a kitchen helper, for which there are approximately 500,000 jobs nationally and 20,000 in Ohio; and a mail sorter, for which there are approximately 125,000 jobs nationally and over

8

6,000 jobs in Ohio.  (Tr. 55-58).

Craemer's counsel asked the VE to add to the ALJ's hypothetical that the individual would either miss work or be tardy once a week because of her psychological condition.  (Tr. 58).  The VE testified that there would be no competitive unskilled employment for such an individual.   Craemer's counsel then asked the VE to modify the ALJ's hypothetical to include a limitation that the individual would need to miss work to attend counseling three half days per week.  (Tr. 58).  The VE testified that there would be no competitive employment for such an individual.  (Tr. 58).

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. § 416.1100 and 20 C.F.R. § 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial

gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 404.1520(d) and 20 C.F.R. §416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since December 15, 2003, the alleged onset date....
>
> 3. The claimant has the following severe impairment: major depressive disorder....
>
> 4. The claimant does not have an  impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525,404.1526, 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember, and carry out simple instructions; no strict production quotas; occasional superficial interaction with coworkers and supervisors; no interaction with the public.
>
> 6. The claimant is unable to perform any past relevant work....
>
> 7. The claimant was born on November 22, 1961 and was 42 years old, which is defined as, [sic] on the alleged disability onset date....

> 8. The claimant has at least a high school education and is able to communicate in English....
>
> 9. Transferability of job skills is not an issue in this case because the claimants past relevant work is unskilled....
>
> 10. Considering the claimant's age, education, work experience, and  residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform....
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2003 through the date of this decision....

(Tr.11,12, 13,17,18).

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  See Elam v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); see also Richardson v. Perales, 402 U.S. 389 (1971).

## VI.  Analysis

Craemer alleges that the ALJ's hypothetical question to the VE was inadequate

11

because it failed to include counsel's proposed limitations that Craemer would be tardy or absent from work due to her psychological condition. The Commissioner disputes this claim.

A VE's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Craemer claims that the hypothetical question posed to the VE was inadequate because it failed to include either of counsel's proposed limitations, *i.e.* that Craemer would be tardy or absent from work at least once a week because of her psychological condition, or that she would be absent from work three half days per week to attend counseling sessions. Accordingly, Craemer argues that the ALJ erred in relying on the VE's testimony to determine that substantial jobs exist that Craemer could perform. Craemer's argument is not well taken.

"Hypothetical questions posed to the expert witness need only enumerate those physical and mental impairments of the claimant which the ALJ finds supported by the medical evidence in the record." *Miller v. Sec'y of Health & Human Servs.*, 895 F. 2d 1414, 1990 WL 10695 *2 (C.A. 6 (Ohio)) (citing *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir.1987). In the instant case, Craemer claims her proposed limitations are supported by her GAF scores, as well as the consulting and reviewing doctors' opinions. (Plaintiff's Reply Brief p. 1-2). This evidence does not support Craemer's proposed limitations; and, therefore, the ALJ properly excluded these limitations from the hypothetical question presented to the VE.

Regarding the GAF scores, the ALJ stated that GAF scores generally provide a

12

snapshot of an individual's functioning on a particular day and do not provide a reliable picture of an individual's functioning over time.  The ALJ found that while Craemer was assigned a low GAF score on days when she was particularly stressed, her mental status always improved within a few days to a few weeks.  (Tr. 16, 240-248, 280-285, 396-405).

Moreover, neither Dr. Leidal's nor Dr. Melvin's opinion supports Craemer's proposed limitations.  Dr. Leidal opined that Craemer was moderately impaired in her ability to adapt to the work environment, tolerate the stressors of work, and complete a normal workday; however, he also opined that her ability to perform within a schedule, maintain attendance, and be punctual was not impaired.  (Tr. 246).  Dr. Melvin, who credited Dr. Leidal's findings, likewise found Craemer to be only moderately limited, and opined that Craemer retained the ability to do simple repetitive tasks in an environment with limited social contact, where expectations are clear, and changes are gradual.  (Tr. 249-252).  There is no evidence that such moderate limitations support the significant limitations proposed by Craemer.  Accordingly, the ALJ properly excluded these limitations from the hypothetical question posed to the VE; and, therefore, there is substantial evidence to support his finding that a substantial number of jobs exist that Craemer can perform.

## VII.  Decision

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/*Nancy A. Vecchiarelli*
Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: March 18, 2010